IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN D. HAYWOOD, #B44617, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| C/O MAUE, CHANDLER ESTATO, and KIMBERLY BUTLER, | ) ) ) ) |
| Defendants. | ) ) |

Case No. 18−cv–524−SMY

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

In *Haywood v. Finnerman*, Case No. 18-cv-21-JPG (S.D. Ill. Jan. 5, 2018), Plaintiff John Haywood, an inmate at Lawrence Correctional Center, filed an action for deprivations of his constitutional rights under 42 U.S.C. § 1983. Pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), three claims against Defendants Maue, Estato, and Butler were severed from the initial action to form the basis for this action, Case No. 18-cv-524-SMY.

This case is now before the Court for a preliminary review of those claims pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which
> relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune

from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the relevant allegations in Plaintiff's Complaint, the Court concludes that Count 7 in this action shall survive past the threshold stage.

## **The Complaint**

The allegations in Plaintiff's Complaint (Doc. 2) relevant to this severed action are as follows: in May 2014, Plaintiff had been moved to a cell with another inmate (Doyle) who, like Plaintiff, had a bottom bunk permit. Rather than report the problem, Doyle tried to force Plaintiff out of the cell by starting an argument and accusing Plaintiff of acting aggressively. (Doc. 2, p. 11). Plaintiff was not aggressive, however. He packed his property so that he could request another cell, which he explained to C/O Mrs. K (not a defendant).

Later that day, Defendant Maue and several other officers came to the cell with Doyle (who had been at work), and Maue sent Doyle into the cell to fight Plaintiff. Plaintiff swung first, Doyle ran out of the cell, and the force of Plaintiff's swing caused him to fall. Maue caught Plaintiff in a headlock, and then a chokehold that Plaintiff felt was an attempt to break his neck.

2

(Doc. 2, p. 11). A Lieutenant arrived and ordered Maue to let Plaintiff go before he killed him. (Doc. 2, p. 12). Maue released Plaintiff but then shoved his face into the floor and put his knee on the back of Plaintiff's neck. The Lieutenant ordered Maue to stop, and took Plaintiff to Health Care in a wheelchair.

Plaintiff believes he suffered a broken elbow, and he could not speak for 4 days because of his neck injury. X-rays were not taken until 3 weeks later, and Plaintiff got no medical treatment. Plaintiff was told nothing was wrong with his elbow or neck, but he insists he can still move a piece of his elbow, and claims the X-ray report he received showed a fracture. (Doc. 2, p. 13).

Plaintiff was charged with a disciplinary infraction for the "fight" with Doyle. (Doc. 2, p. 12). On the day his ticket was to be heard, Defendant C/O Chandler (Estato)[1] told Plaintiff to get ready as he would be back to get him. Plaintiff requested a wheelchair. (Doc. 2, p. 12). Chandler never returned, and when Plaintiff questioned him later that day, Chandler responded that Plaintiff had "refused" to attend the hearing when he asked for a wheelchair. (Doc. 2, p. 13).

Plaintiff was found guilty of a staff assault for the incident with Maue. He was moved from the Health Care Unit (where he had spent the previous 3 weeks) to segregation, thinking he had been given a 30-day segregation punishment. However, he spoke to Defendant Warden Butler when she visited the wing, and she informed him that his punishment was for 90 days in segregation. Plaintiff disputes that the incident amounted to a staff assault, because Maue entered his cell as he was falling, so that Plaintiff fell onto him. (Doc. 2, p. 14).

Between the above 2014 incident and 2016, Plaintiff was told that he could not be housed on South Lowers because Maue and Doyle felt unsafe with him. Plaintiff was then shuffled

---

[1] Plaintiff refers to this Defendant as "C/O Chandler" in the body of the Complaint, and lists his full name of "C/O Chandler Estato in the list of Defendants. (Doc. 2, p. 2).

3

between several non-handicap-accessible housing areas until he was transferred to Lawrence in 2016. (Doc. 2, p. 14).

## Discussion

In its Severance Order (Doc. 1), the Court designated the following counts to be severed into this *pro se* action. The parties and the Court will continue to use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 7 –** Eighth Amendment claim against Maue for using excessive force against Plaintiff at Menard in May 2014.
>
> **Count 8 –** Fourteenth Amendment due process claim against Chandler Estato for failing to take Plaintiff to his disciplinary hearing on the staff assault charge in May 2014, and against Butler and Maue in connection with the disciplinary action.
>
> **Count 9 –** Eighth Amendment claim against Maue for preventing Plaintiff from being housed in the handicap-accessible housing area on South Lowers from 2014-2016.

As discussed in more detail below, Count 7 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 7

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious

bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Because Plaintiff has satisfied this standard with respect to his excessive force claim against Maue, Count 7 will proceed past threshold.

### Count 8

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must assess whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Here, Plaintiff claims that Estato failed to escort him to his disciplinary hearing, and as a result, he missed it. These allegations suggest that Plaintiff was deprived of his right to appear in person at his hearing, contrary to *Wolff*'s requirements. However, that is not the end of the inquiry.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or

5

property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Id.* (citing *Lekas v. Briley*, 405 F.3d 602, 608-09, n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996). This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). For inmates whose punishment includes disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").

Courts look to two factors when determining whether disciplinary segregation conditions impose an atypical and significant hardship: "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days);

6

*Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In other words, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

"[I]f the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh," then some process is required. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). The Seventh Circuit has clarified that a court must consider the length of segregated confinement together with all of the conditions of that confinement in determining whether a liberty interest is implicated; it is error to only consider terms of longer than six months, and conditions should not be considered in isolation from one another. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015).

Plaintiff's allegations do not establish that he was deprived of a liberty interest. Regardless of the length of his segregation, Plaintiff has not described any conditions there that make it plausible that he was subjected to unconstitutional conditions of confinement. Plaintiff has also failed to sufficiently associate Defendants Maue or Butler with his due process claim, as it is unclear what role, if any, either of these individuals played in the actual issuance or determination of his disciplinary ticket. For these reasons, Plaintiff's due process claims asserted in Count 8 will be dismissed without prejudice as against each of the defendants.

## Count 9

To prevail on an Eighth Amendment claim based on inadequate prison conditions, the inmate must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of

7

life's necessities," and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted). Here, Plaintiff alleges that he "was shuffled between several non-handicap-accessible housing areas" after he was removed from the South Lowers, but he does not describe the conditions he faced in the other housing areas.

Even assuming Plaintiff satisfied the objective standard, he has failed to satisfy the second requirement – a subjective element establishing a defendant's culpable state of mind. This state of mind, deliberate indifference to a substantial risk of serious harm to the inmate, requires that the defendant be aware of facts from which the inference could be drawn that a substantial risk exists, and he also must draw the inference. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a deliberate indifference claim, Plaintiff must show that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Plaintiff claims that he was moved out of the South Lowers because Maue and Doyle felt unsafe with him. But he does not allege that Maue knew or should have known that his being moved from the South Lowers put him at risk in any way. Nor does he make any allegations that suggest Maue is at fault for any of the conditions he may have faced once moved. Thus, Plaintiff's allegations are insufficient to state a deliberate indifference claim against Maue for the conditions of his confinement he faced prior to his transfer to Lawrence in March 2016.

**Pending Motions**

Plaintiff's Motions for Recruitment of Counsel (Docs. 5, 6) are **REFERRED** to United

States Magistrate Judge Reona J. Daly for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 7** shall **PROCEED** against **MAUE**.

**IT IS FURTHER ORDERED** that **COUNTS 8** and **9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER OREDERED** that **BUTLER** and **ESTATO** are **DISMISSED** without prejudice from this action for the reasons stated herein.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **MAUE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to this defendant's place of employment as identified by Plaintiff. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on him, and the Court will require that he pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant Maue is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 5, 2018**

<u>**s/ STACI M. YANDLE**</u>
**U.S. District Judge**